Josephine A. JENKINS, Plaintiff
(Appellant-Respondent),

v.

Clarence R. JENKINS, Defendant
(Respondent-Appellant).

Nos. 31912, 31920.

St. Louis Court of Appeals.

Missouri.

Oct. 19, 1965.

Rehearing Denied Nov. 17, 1965.

Morris B. Kessler, St. Louis, for plaintiff-appellant-respondent.

Louis S. Czech, Clayton, for defendant-respondent-appellant.

WOLFE, Presiding Judge.

This is an action for divorce brought by Josephine A. Jenkins against Clarence R. Jenkins. The defendant filed a cross-bill. The court found against the defendant on his cross-bill and granted a divorce to the plaintiff upon her petition. There were four children born of the marriage and the court gave custody of the children to the plaintiff with part time temporary custody to the defendant. The plaintiff was awarded $50.00 a week alimony and $60.00 a week for the support of the children. The plaintiff appealed, contending that the alimony and support money are inadequate. The defendant also appealed, contending that he should have been awarded the divorce on his cross-bill.

The plaintiff charged in her petition that the defendant failed to properly support his family. She averred that he associated with another woman and was cold and indifferent toward plaintiff and their children. She also alleged that he was addicted to habitual drunkenness and had been so for a year or more. The defendant answering denied all of plaintiff's allegations as to his misconduct. In his cross-bill he alleged that plaintiff was possessed of a violent temper which she displayed without cause; she criticized defendant before his friends and associates, hurting his reputation; that she refused to go out with him; objected to him taking the children to church; refused to have marital relations with him; did not visit him when he was in a hospital; refused to cook meals; and that she maintained the home in a dirty and disorderly fashion.

The evidence presented by the parties was in diametrical conflict on all of the charges that each had alleged against the other.

The plaintiff testified that on two prior occasions she had brought suit for divorce but that there had been a reconciliation and the suits had been dismissed. She and her husband still lived in the same house but she does not occupy the same bedroom. She has had no marital relations with him since before filing the suit for divorce. She testified that their home was poorly furnished because the defendant would not buy furniture and that the windows were without drapes. She had charge accounts but was afraid to use them because some checks written in payment of bills had been returned for insufficient funds.

She stated that defendant took the children to a Baptist Church near their home and she went there very seldom because it was not her church. She was a Presbyterian but did not attend her own church except on a few occasions. She said that on Sunday he took the children to the country club and let them swim throughout the day while he played cards and drank. She said that he came home drunk about three nights a week. She stated that on such occasions he would revile her and that he had pushed her against the wall, called her vile names in the presence of the children. On one occasion when she wanted to call a doctor for her daughter who was ill he refused to let her do so and because of the ensuing argument plaintiff called the police. She stated that the defendant was a reckless driver when intoxicated and that he had had three accidents because of this. The plaintiff called to the stand her two older children, ages thirteen and twelve. Her son, who was the older of the two, told

of riding with his mother to a parking lot one night. He said that they saw his father's car parked there and that he was seated in it with a woman and that he had his arm up over the back of the seat. After the boy and his mother returned home his father came in and there were lipstick stains and make-up marks on his shirt. The plaintiff confronted him with the charge that he had been out with a woman but he denied it. The soiled shirt was offered in evidence by the plaintiff. It had marks upon it which she said were stains caused by cosmetics. The children corroborated the testimony of the mother about the defendant's drinking. The daughter said that one Sunday after an outing at a farm where her father had been drinking she was so frightened on the ride home that she prayed all the way. The plaintiff's sister told of the defendant coming to his home intoxicated one time when she was there with the children.

The plaintiff testified at length about her financial requirements and those of her children. She had an itemized list of various anticipated and actual expenses which totaled $950.00 a month. She put in evidence the income tax return for the preceding year in which defendant had reported an income of $25,000 as salary paid him by Keeven-Jenkins Real Estate Co.

The defendant testified that he bought the house in which they lived for $26,000. He said that his wife would not tell the builder the colors she desired in the decorating scheme so he told the builder to go ahead with the decorating and to do the best he could. They had about $1,000 at the time they moved in and some money expected from a house that they had previously owned and sold. He said that he told her to use the money to buy furniture but she replied that she would not spend a penny on the "big old barn." He said that his salary check which he received every two weeks was deposited in a joint checking account upon which his wife could draw.

He testified that his wife had a very hot temper and that on many occasions she had struck him. Twice she had broken his glasses. She tore his shirt off and on one occasion kicked a hole in the television set. This was denied by the plaintiff on rebuttal. He said that his home was in a disorderly condition and that he got breakfast for the children while his wife slept. He regularly took them to Sunday School which he also attended, but his wife told the children they did not need to go. He took his son to Scout meetings and a boys' baseball league games. Each Sunday in the summer time he took the children to the country club after Sunday School to spend the rest of the day. His wife did not want to go there and did not go out with them.

As to the matter relating to the woman in his automobile, he said that she had been a waitress in a restaurant where he used to lunch and that his company had sold her a house. He met her by chance on the evening in question and she said that she wanted to sell her house and move to California. He took her to dinner and was seated in his car afterwards talking about the sale of her house at the time his wife and son saw him. He denied that there were any stains on his shirt and said that he had not embraced or kissed the woman.

He presented evidence that his wife had made derogatory remarks about him in public and to his friends. As to his drinking, he said that he was a moderate drinker and that he had never been drunk. He admitted that he had had three accidents with his car but stated that these were caused because he had poor night vision and that by reason of this he no longer drives at night.

The evidence relating to the defendant's income and his financial situation was scant. There was a tax return mentioned in which the defendant declared and paid tax on an income of $25,000 for the year 1962 as salary received from the real estate company, but he denied that he received this amount. He testified he was only paid

$12,000 and stated that the $25,000 was just a ledger entry on the books of the Keeven-Jenkins Real Estate Company. He gave no further explanation of why he made the tax return for a sum over twice that which he said that he had received. He stated that if he lived alone his living expenses would be $625 a month.

The defendant had a one-half interest in the Keeven-Jenkins Real Estate Company. We assume that it is a corporation since the defendant said he is vice-president of the company; however, Keeven testified that he and Jenkins were partners. When asked what their salaries were, Keeven stated, "Well, I draw $1,000 a month, less income tax. * * * Ray draws the same salary." He said that they might have to cut that amount because closings had been slow and that their bank account was low. He testified that their business did not just include the listing and selling of real estate but that they were also builders. The company had completed the construction of an apartment "project" upon which it had obtained a loan for construction and permanent financing in the sum of $724,000. The company had a 20 acre tract which was zoned for multiple dwellings and it is a 264 unit project. It had sold one tract soon after acquiring it for profit of $35,000.

The foregoing appears to be all of the evidence pertinent to the points herein raised and upon the evidence stated above court granted the plaintiff a divorce and awarded her custody of the four children with temporary custody each Sunday in the defendant. In addition the court made the mentioned award of alimony and support money.

By reason of the conflicts in the testimony a decision here must rest largely upon the credibility of the witnesses and the weight to be given their testimony. The trial court having the witnesses before it had a better opportunity to determine their veracity than this court has. In our re-view we give due deference to the findings of the trial judge but we do, nevertheless, reach our own conclusions and render such judgment as the evidence warrants. Politte v. Politte, Mo.App., 230 S.W.2d 142.

The defendant-appellant contends that the evidence was insufficient to grant the plaintiff a decree of divorce in that it affirmatively shows that she was not the innocent and injured party. In support of this assertion he relies chiefly upon the testimony of the children. They stated that their mother argued and displayed temper when quarreling with their father. They also testified that the father always started the arguments, and provoked the quarrels. Acts and words of retaliation are not sufficient to compel the finding that the retaliating party was not the innocent and injured one. A party to a divorce suit does not have to be without fault to be the innocent and injured party. We therefore rule this point against the defendant-appellant. Harwell v. Harwell, Mo.App., 355 S.W.2d 137; Myers v. Myers, Mo.App., 356 S.W.2d 522; LeBeau v. LeBeau, Mo. App., 366 S.W.2d 515.

The next point raised is that the court erred in awarding custody of the children to the mother. The ages of the children were 13, 12, 7 and 4 years. Children of tender years, as a rule, are left with the mother unless there is some compelling reason to do otherwise. The two younger ones here are certainly of tender years who need their mother and they should also enjoy the companionship and assistance of their older brother and sister. Jennings v. Jennings, Mo.App., 379 S.W.2d 159. There is no evidence here to indicate that the children would not be well cared for in their mother's custody and the order of the court placing them there will not be disturbed.

The plaintiff-appellant complains of the award of alimony and support money for the four children. She asserts that $50.00 a week alimony and $60.00 a week

for the support of the children is grossly inadequate. In fixing the amount of such an award, the factors that are generally considered are the financial status of the parties, including the amount of their individual estates, incomes, obligations and necessities. Clark v. Clark, Mo.App., 306 S.W.2d 641. If we limit ourselves to just one of these factors, the salary received by the defendant from his employment with the Keeven-Jenkins Real Estate Co., and if we assume that his income was $25,000 a year as shown by his last tax return, then the plaintiff's contention has merit and the award is quite inadequate.

The defendant testified that he would need $625.00 a month for his own expenses and it is inconceivable that the wife could actually keep up a home and maintain the children properly on a sum less than the defendant considered necessary to meet his own living expenses. The court probably accepted as true the defendant's statement that he drew only $12,000 gross as his salary. This, however, is no proof that the balance of his salary declared in his income tax return was not available to him.

Keeven and Jenkins each own an equal interest in their company and apparently Jenkins' interest constituted his estate and the source of his income. The court refused to hear evidence of the financial standing of the company. The company's earnings, its capital, its assets and liabilities and its future prospects are all material to a determination of a fair award of alimony and maintenance, but this was not in evidence. Neither the court below nor can we make an intelligent determination of the awards with this factor missing and the case must consequently be sent back for additional evidence touching upon these matters.

For the reasons stated, the decree granting the plaintiff a divorce is affirmed, and the award of alimony and maintenance is set aside. The awarded alimony and support money pendente lite will remain in force and effect and the cause is remanded

for a further hearing and decree on the question of permanent alimony and maintenance in accordance with the views herein expressed. It is so ordered.

ANDERSON, J., and WOODSON OLDHAM, Special Judge, concur.

RUDDY, J., not participating.